KORTGARDNER TRUCKING CO. v. CRIPPEN CONSTRUCTION CO.

Eastern Section. June 20, 1930.

Hodges & Creekmore, of Knoxville, for appellant.
Green, Webb & Bass, of Knoxville, for appellee.

SENTER, J. The complainant is a Kentucky corporation and sues the defendant on a claim of $1776.50, alleged retained percentage growing out of a road contract in the State of Kentucky. The bill alleges that in the year 1923 it entered into a contract with the defendant, Crippen Construction Co., to do certain road construction work for the defendant on a state and federal aid project in the State of Kentucky. The bill alleges that complainant was a subcontractor of the defendant, and under its contract was to receive ninety per cent of the amount of work on monthly estimates and to receive the balance, ten per cent retained percentage, when the work was completed. The bill further alleges that the total amount of work done by complainant for the defendant under its contract was $17,765, and that it had received from the defendant on the monthly estimates during the summer of 1923 the sum of $15,988.50, leaving the defendant due and owing to complainant, as of October 1, 1923, the time of the completion of the work, a balance of $1776.50, and for which amount it sues.

The defendant answered the bill, and the answer admits that it entered into a contract with complainant in 1923, to do certain road construction work in the state of Kentucky. The answer admits that the complainant did this work and that the amount alleged in the bill is correct as representing the unpaid balance. The answer admits that ten per cent of the total amount was to be retained until the completion of the work, but alleges that the ten per cent was retained by the state of Kentucky and not by this defendant. The answer further alleges that the ten per cent retainage was not to be paid to complainant until the defendant had collected the same. The answer alleges that the Wilmore Construction Company, of Kentucky, procured the contract from the state of Kentucky for the building of about sixteen miles of state and federal aid highway; that the defendant, in turn, contracted with the Wilmore Construction Company for the grading and draining of the sixteen miles of highway, and was the subcontractor to the Wilmore Construction Co.; that it sub-let to complainant the grading or fill of about 4,000 feet in length at a price ten per cent less than defendant was to receive from the

Wilmore Construction Co.; that the complainant was to receive ninety per cent on estimates as the work progressed, and would not receive the ten per cent retainage until the completion of the work and not until defendant had been paid the ten per cent retainage.

The answer further alleged that the state of Kentucky refused to make final settlement with Wilmore Construction Co., and finally the Wilmore Construction Co., the general contractor, with the aid of defendant, procured a special Act to be passed by the Kentucky legislature authorizing the Wilmore Construction Co. to sue the state or the State Highway Department for the alleged retained percentage; that pursuant to said enactment in 1927 the Wilmore Construction Co. filed suit on the claim for the retained percentage, and a claim for additional work amounting to about $95,000; that Wilmore Construction Company, without consulting defendant, compromised the suit with the state of Kentucky and as a compromise settlement, received the sum of $30,000; that notwithstanding the agreement between defendant and Wilmore Construction Co., that whatever amount was received or realized from said suit, or any compromise with the state of Kentucky, that defendant was to receive its pro rata portion of same on the basis of its claim as the same sustained to the amount of the claim of Wilmore Construction Co.; that the Wilmore Construction Co. had refused to pay the defendant any part of the amount realized in the compromise settlement, but was claiming that defendant was not entitled to any part of the same, but that the Wilmore Construction Co. asserted a claim against defendant for an alleged $17,000 because of the alleged failure of defendant to comply with its contract in the grading and drainage. The answer further alleged that under its contract with complainant it was not liable to complainant for the ten per cent retainage until it had collected the same from the state of Kentucky or Wilmore Construction Co., and that therefore the suit of complainant against defendant was premature.

Upon the hearing of the cause the Chancellor found the issues in favor of the defendant, and held that the suit had been prematurely brought by complainant, and that complainant would not be entitled to recover against the defendant for the ten per cent retained until the same had been collected by the defendant. From this decree complainant prayed and was granted an appeal to this court, which appeal has been duly perfected, and errors assigned.

The several assignments of error are directed to the action of the Chancellor in holding and decreeing that complainant was not entitled to maintain the suit against the defendant until defendant had received from the Wilmore Construction Co. the retained percentage, and in holding that the suit was prematurely brought; and in holding that under the contract and the facts complainant would not be liable

to defendant for the retained percentage until it had collected the same from Wilmore Construction Co.

There seems to be no controversy between the parties on the question of the complainant having fully performed its contract in the matter of doing the grading and other work that it was required to do as the subcontractor under its contract with the defendant. It appears that this work was all performed and completed by complainant by October 1, 1923. It is contended by complainant that it did not agree or contract with the defendant to wait until the state of Kentucky had settled the ten per cent retainage with the defendant; that its contract was with the defendant alone.

The complainant took the deposition of George Kortgardner, Jr., the president of complainant corporation. This witness testified that he made the contract with the defendant for his corporation, whereby complainant became the subcontractor of defendant. He testified as to the total amount of work done, and that he completed his part of the contract in about six months, or by October 1, 1923. He testified that complainant had received from defendant all of the contract price except the ten per cent retained until completion. He admitted that defendant would be entitled to have deducted as its profit ten per cent of the amount retained, and that the claim of complainant was for the sum of $1598.85 in place of $1776.50. This witness testified that there was a short memorandum of the contract in writing. He denied that the complainant was to wait until defendant collected the ten per cent retained until the state of Kentucky settled with defendant. He stated that he knew nothing of the suit by the Wilmore Construction Co. against the state of Kentucky, and denied that he was not entitled to receive this retained percentage until the state of Kentucky had settled with the contractor.

On cross-examination this witness admitted that this was the first contract for road construction work that his company had entered into. We think it appears with reasonable certainty that he knew and understood the custom that the retained percentage would not be paid until the completion of the road contract, and that the state would retain ten per cent of the estimates until the entire contract had been fully completed and accepted by the State Highway Department. J. D. Crippen, of the Crippen Construction Co., testified that his company became the subcontractor under Wilmore Construction Co. for the grading and drainage of this sixteen mile portion of the highway; that Wilmore Construction Co. was the general contractor for this sixteen miles, including the hard surface as well as the grading and drainage. He testified that he made the contract for his company with the complainant for this 4,000 feet of fill. He admitted that complainant had fully performed its contract as to the completion of the grading and dirt work and other work covered by

its contract, and that this portion of the contract was completed by complainant to his satisfaction. He stated that at the time he made the contract with the complainant to do this particular work, that a short memorandum contract was entered into with the agreement stated therein that it was but a memorandum of the contract which would later be reduced to writing setting out the details; that the parties never did prepare and sign a contract covering all the details, but that complainant expressed satisfaction with the memorandum contract. This memorandum contract is self explanatory as to its nature and purpose, and is as follows:

"This contract made and entered into by and between the Crippen Construction Co., of Knoxville, Tennessee, and the Kortgardner Trucking Co., a corporation of Cincinnati, Ohio, to-wit:

"The Crippen Construction Co. does hereby sub-let to the Kortgardner Trucking Co. that portion of their highway work on the Bardstown road at Salt River fill, known as the borrow pit and fill.

"The price to be paid for this work will be forty-seven cents (47c) per cubic yard for earth excavation.

"The price to be paid for rock excavation will be one dollar and ten cents ($1.10) per cubic yard.

"Less ten per cent (10%) of bid price. It is understood that there is no rolling to be done on this work.

"This contract is made to act as a binder for the fulfillment of this contract by both parties until a formal contract can be prepared and signed which will carry full details of this agreement. The Kortgardner agrees to ship to this job one Best sixty tractor and five Maney wheelers, and such other small tools that may be required for the operation of this out-fit at once, and shall proceed to work as soon as they get this outfit shipped to the job.

"Signed in duplicate this the 25th day of April, 1923."

The above memorandum contract was signed by both parties thereto.

J. D. Crippen testified that the above instrument did not purport to carry all the details that were agreed upon between the parties pertaining to this work, but the details were agreed to orally, and it was intended at the time that the details so agreed to would be incorporated in the formal contract to be subsequently prepared and signed by the parties, but that the formal contract was never put into writing and signed by the parties. Other evidence was taken to show the usual custom among contractors for road work, and that the ten per cent retainage was usual and customary, and that under the custom obtaining among contractors that a subcontractor was not expected to receive this retained percentage until the state had settled with the general contractor.

After a careful review of all the evidence we are of the opinion that the complainant was familiar with the general custom among contractors as to when the retained percentage would be paid, and there was therefore a meeting of the minds between the parties to this contract that defendant would pay to complainant the retained percentage when he collected the same from the state of Kentucky.

It appears that the Wilmore Construction Co. was the general contractor for the full completion of this sixteen mile stretch of this highway from Bardstown, Kentucky to Louisville. The Wilmore Construction Co. could not begin to put down the slab or surface on this highway until after all the grading and drainage had been completed. This was evidently known to complainant at the time it entered into the contract with defendant for this 4,000 feet Salt River fill. This appears from the correspondence passing between the parties after the completion of the work by complainant.

It also appears that before this work was ultimately completed, the entire construction of the road by Wilmore Construction Co. there was a change in administration in the State of Kentucky and a new Highway Commissioner or official went into office. It also appears that the new administration refused to recognize the claim of Wilmore for the ten per cent retainage and other claims, and refused to pay any part of the same. It also appears that Wilmore Construction Co. procured the passage as a special Act by the legislature of the state of Kentucky which enabled and authorized the Wilmore Construction Co. to sue the State of Kentucky or the State Highway Department on its claim. · The Wilmore Construction Co. entered into a written agreement with the Crippen Construction Co., its subcontractor, whereby it was agreed that the Wilmore Construction Co. and the Crippen Construction Co. would share in any recovery or any compromise of the suit instituted by Wilmore Construction Co. against the State of Kentucky on the ratio and basis of their respective claims; that the Wilmore Construction Co.'s claim for total retained percentage was about $32,000, and that Crippen Construction Co. was entitled to about $10,000 of the $32,000, and that any amount realized from said suit or a compromise thereof would be apportioned between Wilmore Construction Co. and Crippen Construction Co. on the percentage basis or ratio of the respective claims of the parties. It also appears that after the suit had been instituted by the Wilmore Construction Co., the compromise agreement was reached and the suit was compromised and settled by the state paying the Wilmore Construction Co. the sum of $30,000. The Wilmore Construction Co. did not inform the Crippen Construction Co. of this settlement until about three months after the settlement or compromise had been made. The Crippen Construction Co. made demand for its pro rata part of the $30,000 from the Wilmore Construction Co. under its agreement

between the two companies. The Wilmore Construction Co. refused to pay the Crippen Construction Co. any part of the $30,000. The Crippen Construction Co. was not a party to that suit. It is the contention of the Crippen Construction Co. that it has not instituted suit against the Wilmore Construction Co. because Wilmore Construction Co. is a resident of the State of Kentucky, and the Crippen Construction Co. does not want to institute the suit in the state of the residence of the Wilmore Construction Co., but claims that it is waiting until the Wilmore Construction Co. gets some contract in the State of Tennessee or comes into this State so that service of process can be had against that company in the courts of this State. It is also the contention of the Crippen Construction Co. that under its verbal contract and agreements with complainant that it is not liable to complainant for the retained percentage until it collects the same from Wilmore Construction Co. Mr. J. D. Crippen testified that it was the purpose of this company to sue the Wilmore Construction Co. on its agreement with the Wilmore Construction Co. for its pro rata portion of the amount collected by the Wilmore Construction Co. from the State of Kentucky, as soon as it can get service of process against said company in this State; but that it fears the result of litigation with Wilmore Construction Co. if the suit has to be brought in the State of Kentucky, the residence of the Wilmore Construction Co.

We have carefully examined all the evidence in the record, including the letters and other exhibits. The conclusion we reach is that the Crippen Construction Co. has not shown proper diligence in an effort to collect from the Wilmore Construction Co. the pro rata portion of the settlement between the Wilmore Construction Co. and the State of Kentucky. Several months had elapsed after the settlement had been made and before this suit was instituted. The defendant does not deny that complainant performed the work according to the contract. This work was completed in October, 1923, by complainant. The Wilmore Construction Co. procured a settlement from the State of Kentucky and received $30,000. It is shown by the record that the retained percentage retained by the State of Kentucky on all the work on this highway contract was about $32,000. Of this amount the Wilmore Construction Co. was entitled to about $22,000 and the Crippen Construction Co. was entitled to about $10,000. It would thus appear that the Wilmore Construction Co. received from the State of Kentucky in the compromise settlement all but about $2,000 claimed to represent the balance of the retained percentage. Complainant had no contractual relation whatever with the Wilmore Construction Co., nor with the State of Kentucky. Its contract was solely with the Crippen Construction Co., the defendant. Complainant was not consulted either by the Crippen Construction Co. or by the Wilmore Construction Co. with reference to the settlement and had no

part in the same. He was not consulted about the suit which the Wilmore Construction Co. instituted against the State of Kentucky under the special legislation. Complainant has relied all the time on the defendant for this retained percentage on his contract.

It also appears from the record that the Crippen Construction Co., as the subcontractor under the Wilmore Construction Co., sub-let to other contractors other portions of the grading and drainage which it had contracted with Wilmore to perform. It is not disclosed by the record whether the Crippen Construction Co. sub-let to other contractors all of the work on this sixteen miles of grading and drainage that it had contracted with Wilmore to perform. But certainly if sub-contracts were let by the Crippen Construction Co. to four subcontractors a considerable portion if not all of the ten per cent retained would properly go to the subcontractors of Crippen Construction Co. when collected. If all of this sixteen miles of drainage and grading was sub-let to other subcontractors; and if the Crippen Construction Co. was not liable to the subcontractors until Crippen Construction Co. can collect the same from the Wilmore Construction Co., it could well be said that the Crippen Construction Co. would have but little interest in enforcing collection against the Wilmore Construction Co., since the Crippen Construction Co. would only be interested to the extent of its profit of ten per cent of the retainage.

However, we do not think it is a good or sufficient reason offered by defendant, Crippen Construction Co., as to why suit has been delayed for this length of time against the Wilmore Construction Co. The only reason or excuse offered is that it fears the result of litigation with the Wilmore Construction Co. in the State courts of the State of Kentucky. Nor do we think that there is anything in the situation that would warrant the Crippen Construction Co. in this delay in suing on its agreement with the Wilmore Construction Co. If the complainant is required to wait until the defendant can obtain jurisdiction of the Wilmore Construction Co. in the State courts of this State, it is exceedingly doubtful if such a suit would ever be instituted. The defendant, Crippen Construction Co., was fully consulted by the Wilmore Construction Co. in the matter of suing the State of Kentucky, and knew that the suit had been instituted, and assisted in the preparation of the case. The defendant could have become a party to that suit by an intervening petition, which would have protected the defendant in the matter of its pro rata part of any recovery to which it was entitled under its written agreement with Wilmore Construction Co.

While as hereinbefore set out in this opinion, we think the complainant and the defendant both understood that the ten per cent retained percentage would not be paid until after Wilmore Construc-

tion Co., the general contractor, had fully completed the contract, yet we do not think that the complainant and defendant mutually understood and agreed that complainant was not to receive the final ten per cent until the defendant had collected the same from the general contractor or the State of Kentucky. While the record does not disclose that the Wilmore Construction Co. was required by the State Highway Department of Kentucky to give bond for the full performance of the contract, and to protect materialmen, labor and subcontractors, it would be unusual if such bond was not required. If there was any delinquency in the performance of the portion of the contract for the sixteen miles of grading and drainage by the defendant, Crippen Construction Co., or any of its other subcontractors, it does not appear that there was any failure upon the part of complainant to fully perform its contract for the portion of the work sub-let to it. The defendant admits, both in its answer and by its evidence, that complainant had performed its contract as the subcontractor of the defendant, and did all it was required to do under its contract. It is also admitted that the defendant received a profit of ten per cent on the estimates for this particular part of the work, except ten per cent of the amount retained.

It is true that there is some evidence in the record to the effect that after the change of administration in the State of Kentucky, that engineers of the Highway Department made some question about the removal of stumps on the portion of the work done by complainant, and also some denial of the liability of the State of Kentucky in removing the old Telford base. However, it does not appear that this amount was deducted by the State Highway Department in making its settlement with the Wilmore Construction Co. Defendant admits that this work was done by the complainant under its contract with defendant as the subcontractor, and that complainant was entitled to receive pay for the same. If there was any foundation for the contention made by the Highway Department to the effect that the former highway officials had improperly paid for this particular work, the removal of the stumps from the right-of-way and the Telford base, and that the amount paid on that account should be deducted in making the final settlement, we do not think that it would affect the rights of the complainant, since this work was done by the complainant for the defendant, and under its contract with the defendant.

We are of the opinion that the learned Chancellor was in error in holding and decreeing that this suit by complainant was prematurely brought, and in dismissing complainant's bill at the cost of complainant. We are of the opinion that complainant having fully performed its contract, and the State of Kentucky having paid to the general contractor, Wilmore Construction Co., the sum of $30,000 under the compromise settlement, which was only about $2,000 less than the

total of the retained percentage for the entire construction of this highway; and it not appearing that any part of this $2,000 deduction was on account of any over-payments made to the complainant on its portion of the contract, that complainant is entitled in this suit to recover of the defendant the unpaid balance due and owing to complainant from the defendant, which the proof shows to be $1598.85 and the costs of the cause.

It results that the decree of the Chancellor is reversed, and judgment will be rendered here for said sum of $1598.85 and the costs of the cause. Appellee will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.